STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MARJA-LIISA OVERBECK (CABN 261707)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6809
    FAX: (415) 436-7234
    mari.overbeck@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANKLIN D. ERVIN, <br><br> Defendant. | CASE NO. 21-413 HSG <br><br> **UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION** <br><br> Date: March 28, 2022 <br> Time: 10:00 a.m. |

## I. INTRODUCTION & SUMMARY OF ARGUMENT

On July 13, 2021, Defendant Franklin Ervin was approached by officers from the San Francisco and Oakland Police Departments, as well as FBI agents, who were working as part of a Community Violence Reduction Team. The officers came up to Mr. Ervin because he was a wanted felon based on an outstanding *Ramey* warrant that had been authorized by a California Superior Court judge in June of 2021. That warrant was based on Mr. Ervin's unlawful possession of a firearm with an extended-round magazine that had been found alongside another firearm under a floormat in a white Lexus that was illegally parked in the Potrero Hill neighborhood of San Francisco. DNA testing of the firearms revealed Mr. Ervin's DNA on one of those guns.[1] When officers from the Community Violence Reduction Team approached Mr. Ervin to execute the arrest warrant, he and other members of the group he was standing with dispersed and fled. One of the individuals jumped into a nearby white Honda, which he drove on to the sidewalk and through a neighboring lawn before re-entering the roadway to flee. Mr. Ervin fled on foot, engaging an officer in a foot chase before the fleeing white Honda pulled up to him and stopped so that Mr. Ervin could get in. Mr. Ervin did, and as he did a gun fell from his person. Mr. Ervin got away, but the officer who had been pursuing him recovered his gun—a Glock handgun affixed with a fully automatic switch and an extended round magazine loaded with 26 rounds of ammunition (including one in the chamber).

Mr. Ervin successfully evaded law enforcement, but in the early morning hours on August 21, 2021, Mr. Ervin—while driving a stolen blue Jaguar—pulled in front of a Richmond Police Officer who was on routine patrol. Mr. Ervin sped up, driving 90 miles per hour in a 35 mile-per-hour zone, and the officer started to follow him. Mr. Ervin then led the officer on a high-speed car chase that lasted approximately 30 minutes. During the pursuit, Mr. Ervin fled from officers at speeds approaching 120 miles per hour, running through intersections and red lights, often driving on the wrong side of the road, and striking a CHP unit that had responded to assist with the chase. A CHP air unit was called in, and the air unit eventually observed Mr. Ervin pull to the shoulder of the road near Highway 37, exit the car, and get into a silver Honda Accord. That Honda was being driven by Msdymon Jermaine—the

---

[1] Mr. Ervin is a felon, and he accordingly is prohibited from possessing firearms and ammunition.

MEMORANDUM ISO DETENTION  1
21-413 HSG

proposed surety in this case. Mr. Ervin and Ms. Jermaine continued the chase with Ms. Jermaine at the wheel. When Ms. Jermaine pulled the car over and yielded, she and Mr. Ervin ignored the officers' commands to exit the car and could be seen talking to one another. Ms. Jermaine ultimately exited the car, at which point Mr. Ervin tried to jump into the driver's seat and drive away again, but he was detained by multiple officers assisted by a K-9 before he could do so.[2]

On February 15, 2022, Mr. Ervin made his initial appearance before this Court, charged with violating Title 18, United States Code, section 922(g)(1) based on the loaded Glock affixed with a fully automatic switch that fell from his person during the July 2021 incident. At the defendant's initial appearance, the United States moved for pretrial detention. No detention hearing was held. Mr. Ervin instead waived detention without prejudice. Last week, the defense requested that the matter be placed on this Court's calendar for a detention hearing. The government understands that Mr. Ervin wishes to be released so that he can be present for the upcoming birth of his child.

The government understands that United States Pretrial Services ("Pretrial") is recommending that Mr. Ervin be released on a $25,000 unsecured bond, cosigned by Ms. Jermaine, subject to certain conditions to include location monitoring. The government disagrees with the recommendation of Pretrial. Recent incidents, including the charged conduct and Mr. Ervin's demonstrated willingness to endanger himself and others, nearly at all costs, to evade apprehension, demonstrate that he undeniably poses a danger to the community and presents a risk of flight/nonappearance that cannot be mitigated because of his demonstrated unwillingness to comply with court-imposed conditions. These risks cannot be mitigated by a surety who has been complicit in his efforts to evade law enforcement and who has shown herself unable positively to influence his conduct. Accordingly, and as set forth in greater detail below, the government requests that Mr. Ervin be detained.

## II.   FACTUAL BACKGROUND

### A.   Ervin's Criminal Background

Mr. Ervin's criminal history is set forth in the Pre-Bail Report. Mr. Ervin is a member of the

---

[2] A gun was found in the glovebox of the Honda, which Mr. Ervin stated belonged to him. Following this high-speed chase, Mr. Ervin was arrested and charged in Contra Costa County. In October 2021, he pleaded guilty, and was sentenced to one year in custody to be followed by two years of probation. The charges and conviction are set forth in the Pre-Bail Report (ECF No. 11).

Eddy Rock criminal street gang based in San Francisco. He has a long criminal history dating back to when he was a juvenile, including for arrests relating to burglary, receiving stolen property, participation in a criminal street gang, possession of a weapon while at school, and attempted murder, among others. Mr. Ervin was convicted of burglary as a juvenile and received a probationary sentence as well as 35 days in juvenile hall. He also was convicted of illegally possessing a concealed firearm, for which he received 100 months of probation. He has at least one record of willfully failing to obey a juvenile court order—all suggesting that he has had a troubled past obeying the law and associated court orders.

Mr. Ervin's first adult conviction was in 2017 for a felony violation of California Penal Code section 459 (burglary), for which he received 3 years of probation and spent 42 days in jail. In November 2020, he was convicted in state court of being a felon in possession of a firearm and received 3 years of probation and a 1-year custodial sentence. Mr. Ervin's criminal history shows numerous other arrests and violations of his probation for various convictions and suspected offenses, including attempted murder. At the time of the underlying offense conduct, Mr. Ervin was on probation for his 2020 convictions for being a felon in possession of a firearm.

**B.      Offense Conduct & Related Conduct**

<u>December 2020 Incident.</u>  On December 10, 2020, two plainclothes SFPD officers were patrolling the Bayview area of San Francisco in an unmarked police car. The officers were patrolling the area because in the two weeks prior, there had been an increase in gun violence in the areas of Missouri, Dakota, Connecticut, and 25th Streets. To help reduce this violence, the officers began conducting foot patrol around Dakota and Missouri Streets and Watchman Way. During their patrol, the officers went to the 800 block of Missouri Street, which they knew to be an area associated with a violent San Francisco street gang known as "Zoo Block."

The officers observed a white Infiniti that was double-parked on Missouri Street and blocking several other legally-parked cars. The officers approached the Infiniti, which was unoccupied, and used their flashlights to look through the windows. They observed a ski mask on one of the front seats, as well as loose marijuana scattered throughout the car. The officers also observed a visible bulge under the passenger-side floormat. The officers ran the license plate of the Infiniti, which came back registered to an individual who was on felony probation out of San Mateo County with a full warrantless

search condition. After learning of the registered owner's probation status and of his search condition, and based on the officers' belief that there was a firearm in the vehicle under the passenger floor mat, the officers entered the unlocked vehicle, looked under the floor mat, and found two handguns with extended magazines, depicted (as found) in the photograph below.



Subsequent DNA analysis on the guns showed Mr. Ervin's DNA on one of them. In June 2021, SFPD officers then sought and obtained a *Ramey* warrant authoring Mr. Ervin's arrest. The DNA lab testing showed DNA belonging to Steven Mitchell—another member of Eddy Rock—on the other gun. Mr. Mitchell was indicted by a federal grand jury on July 15, 2021, charged with one count of violating Title 18, United States Code, Section 922(g) (Case No. 21-CR-00279-CRB). At his initial appearance, the government sought pre-trial detention of Mr. Mitchell. Mr. Mitchell was released subject to various conditions. In September 2021, Mr. Mitchell was shot and killed in Vallejo, California.

July 2021 Incident. On July 13, 2021, a team of officers from the San Francisco and Oakland Police Departments, as well as FBI agents, were working as part of a Community Violence Reduction Team. Two SFPD officers were conducting surveillance of a residence located on 82nd Avenue in Oakland, California, believed to be a meeting point for members of the Eddy Rock and Tre-4 criminal street gangs.

While conducting surveillance, the officers saw Mr. Ervin drive up to the residence in a grey BMW 328i. A records check of the license plate revealed that the plate belonged to a Toyota,

suggesting to the officers that the grey BMW had been stolen. Both officers also were aware that Mr. Ervin was a wanted felon based on the June 2021 *Ramey* warrant. The officers were further aware that Mr. Ervin was on active probation for a separate violation of Cal. Pen. Code Section 29800 (felon in possession of a firearm) with a warrantless search condition. When the officers approached, Mr. Ervin and others within the group, fled in various directions. Mr. Ervin ran down 82nd Street and was followed by an officer. A white Honda, driven by an individual who also had fled from the officers by driving the Honda on the sidewalk and through a neighboring lawn before re-entering the roadway, stopped to pick up Mr. Ervin. As Mr. Ervin got into the car, a gun fell from his person. The officer collected the gun, which was a Glock handgun with an extended round magazine attached to it and a fully automatic switch.



Mr. Ervin was able to successfully evade arrest. The Glock that the officer saw fall from Mr. Ervin's person was subsequently submitted to a lab for DNA testing. The lab results show Mr. Ervin's DNA on the grip of the gun (likelihood ratio of 302 billion) and on the magazine (likelihood ratio of 1.23 quintillion).

August 2021 Incident. In the early morning hours on August 21, 2021, Mr. Ervin—while driving a stolen blue Jaguar—pulled in front of a Richmond Police Officer who was on routine patrol near Carlson Boulevard and 37th Street in Richmond, California. The officer was patrolling this area because gang violence had recently increased. Indeed, the day prior, Richmond Police Officers had responded to a shooting in this same area where a foot pursuit resulted in the recovery of two firearms.

When Mr. Ervin pulled in front of the officer, he sped up, driving 90 miles per hour in a 35 mile-

per-hour zone. This prompted the officer to follow Mr. Ervin, who then led law enforcement on a high-speed car chase that lasted approximately 30 minutes. During the pursuit, Mr. Ervin fled from officers on I-80 and other surrounding roads at speeds approaching 120 miles per hour, running through multiple intersections and red lights, often driving on the wrong side of the road, and striking a CHP unit that had responded to assist with the chase. Officers attempted to set of spike strips to stop the car, and a CHP air unit eventually was called in to assist. The air unit observed Mr. Ervin pull to the shoulder of the road near Highway 37, exit the car, and get into a silver Honda Accord. That Honda was being driven by Msdymon Jermaine. Mr. Ervin and Ms. Jermaine continued the chase in the Honda, eventually pulling the car over. The two then ignored the officers' commands to exit the car and could be seen talking to one another. Ms. Jermaine ultimately exited the car, at which point Mr. Ervin tried to jump into the driver's seat and drive away again before being detained by multiple officers assisted by a K-9. Another handgun was found in the glovebox of the Honda. Mr. Ervin claimed ownership of it.

### III.  ARGUMENT

Mr. Ervin's history and characteristics, and his conduct in the instant case and leading up to it, underscore the significant danger he poses to the community and his risk of nonappearance.

*First*, Mr. Ervin has demonstrated that he is willing to take any means necessary to avoid being placed into custody, including by endangering himself and others around him. This is evidenced most acutely by the lengthy high-speed chase he initiated last August, where he maneuvered his car to avoid detention by traveling at incredibly high speeds, running red lights, and traveling on the wrong side of the road—maneuvers that could easily have injured others driving and walking on those same streets, as well as the other individuals who were in the car(s) with him. Law enforcement had to call in multiple CHP units (one of which Mr. Ervin struck), an air unit, and a K-9 unit before he ultimately submitted. This conduct underscores the danger the defendant poses to the community, showing a callous disregard not only for his own safety, but also the safety of the public and law enforcement personnel (along with a readiness to flee).

*Second*, Mr. Ervin is believed to be a member in a violent street gang—at a minimum, he has resisted cutting ties with other gang members—further demonstrating that he is a danger to the community (and is unwilling to comply with court-imposed conditions and probation). Mr. Ervin has

twice been convicted of burglary and has a history of carrying loaded (and concealed) firearms, resulting in arrests in 2020, 2021, and a 2019 conviction. Despite Mr. Ervin's repeated prison sentences, he has demonstrated no willingness to curtail his criminal conduct.

*Third*, the nature of Mr. Ervin's conduct shows that has access to numerous firearms and ammunition, is in possession of numerous firearms and ammunition, and can rearm himself quickly. The apparent pipeline of guns that Mr. Ervin has accerss to (and takes advantage of) undeniably creates a danger to the community. *See United States v. Sanchez*, No. 18-CR-00560-HSG-3, 2018 WL 6460323, at *2 (N.D. Cal. Dec. 9, 2018) (revoking pretrial release order and stating that "[a]ll of the alleged crimes involved illegal sale or use of firearms and posed a substantial danger to the community"); *United States v. Jackson*, No. 1:19-CR-730, 2020 WL 1890701, at *4 (N.D. Ohio Apr. 16, 2020) ("Courts' recognition that the communities are put at risk by the unlawful trafficking of firearms into the hands of unknown persons outside the regulatory framework (be it federal, state, or local) of firearms ownership and possession is not new in the context of the calculus of pre-trial release under Section 3142(g)") (citing cases). Indeed, after Mr. Ervin's gun was seized by officers in December 2020, he was found in possession of another firearm when he fled from officers in July 2021. After that gun was recovered when it fell from his person, he was found with another gun in August 2021. There is no reason to think that if he was released from custody he could not or would not rearm himself. This is particularly troubling in light of the well-known recent increase in gun violence, which violence took the life of one of Mr. Ervin's acquaintances in September of last year.

*Fourth*, Mr. Ervin's history and characteristics, including his criminal history, probation history, and gang membership, considered under sections 3142(g)(3) and (g)(4), strongly favor detention. Mr. Ervin had been convicted of two felonies as an adult prior to his commission of the instant offense, including one other charge for unlawfully possessing a firearm (again, indicative of his ability and willingness to arm himself despite prior convictions and court-imposed conditions). He has arrests for obstruction of justice and evading peace officers, and his arrest and conviction record demonstrate that many of his offenses took place while he was on probation. Moreover, much of his recent criminal conduct took place while he was in a relationship with the individual that Pretrial has proposed as a surety and custodian, showing that neither the Court nor the proposed surety is able to dissuade or

meaningfully influence Mr. Ervin's conduct. If presented with the opportunity to flee or otherwise avoid appearing before the Court, Mr. Ervin's history, particularly the fact that he has previously evaded apprehension at least twice, including by leading officers on a 30-minute high-speed car chase, strongly suggests that he will do so again. In short, Mr. Ervin's record of conduct demonstrates that he will neither heed a court's orders nor abide by any conditions of release. The government finds Pretrial's recommendation that Ms. Jermaine serve as a custodian/surety particularly troubling given her participation in Mr. Ervin's efforts to flee from law enforcement in August. The availability of Ms. Jermaine as a bond co-signer does not and cannot alter the danger the defendant poses to the community or his risk of nonappearance where the underlying conduct took place while the defendant was in a relationship with her and given that she actively participated in his flight in August, demonstrating that she either was unable or unwilling to have a meaningful effect on Mr. Ervin's conduct.

*Finally*, the weight of the evidence is overwhelming. In fact, Mr. Ervin has accepted a plea offer extended by the government and by a stipulated order dated March 14, 2021, the matter has been scheduled for a change of plea hearing on May 4, 2022 before the Hon. Haywood S. Gilliam, Jr.

* * *

The government is sympathetic to Mr. Ervin's desire to be present for the birth of his second child. But neither his desire nor any promises by him regarding his expected behavior negate the ongoing concern for the public or the defendant's risk of flight. Notwithstanding his personal desire to be present for his child and for his partner, there is no reason to think that if he was released from custody he would not rearm himself or make an effort to once again evade detention. Inasmuch as any release order will necessarily include an order to obey all laws, which is an order similar to those Mr. Ervin previously has been subject to while on probation, and which he repeatedly has shown a willingness to violate, it seems unlikely that a court order in the form of an injunction provides additional assurances that the defendant will not re-offend.

## IV.   CONCLUSION

The evidence in this case shows that Mr. Ervin poses a danger to the community and presents a risk of nonappearance. Because there are no conditions or combination of conditions that reasonably mitigate Mr. Ervin's dangerousness to the community or risk of nonappearance, he should remain

1  detained pending trial.

2  DATED: 3/27/22                                          Respectfully submitted,

3                                                          STEPHANIE M. HINDS
                                                           United States Attorney
4

5
                                                           _____/s/_____
6                                                          MARJA-LIISA OVERBECK
                                                           Assistant United States Attorney
7